DAN L. STANFORD, ESQ. (067658)
DAVID R. HENDRICKS, ESQ. (134812)
STANFORD AND ASSOCIATES
1494 Union Street, Suite 107
San Diego, CA 92101
TEL: (619) 696-6160
FAX: (619) 531-0853

Attorneys for Plaintiff PACIFIC COAST STEEL

FILED
CIVIL BUSINESS OFFICE 2
CENTRAL DIVISION

2011 JUN 24 PM 1:55

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO

| | |
|---|---|
| PACIFIC COAST STEEL, a Delaware General Partnership,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM H. STODDARD, JR., an individual; ALBRIGHT STODDARD WARNICK ALBRIGHT, a business of unknown form, and DOES 1 through 20, inclusive,<br><br>Defendants. | CASE NO. 37-2011-00093501-CU-PN-CTL<br><br>**COMPLAINT FOR DAMAGES** |

COMES NOW Plaintiff, PACIFIC COAST STEEL for causes of action against Defendants as follows:

I.

**VENUE AND JURISDICTION**

1. Venue is proper in this Court because the events and injuries complained of in this Complaint occurred in the County of San Diego, Plaintiff's principle place of business is within the County of San Diego, all defendants activities were directed to the County of San Diego, and, on information and belief, none of the defendants reside within California.

2. The amount in controversy under this Complaint exceeds the minimal

jurisdictional limit of this Court, and the claims asserted in this Complaint are within the subject matter jurisdiction of the Court.

## II.

## PARTIES

3. Plaintiff, PACIFIC COAST STEEL (hereinafter "PCS") is a Delaware General Partnership which is, and at all times mentioned herein was, qualified to do business in the State of California.

4. Plaintiff is informed and believe and thereon allege that Defendant WILLIAM H. STODDARD, JR. (hereinafter "STODDARD"), is an attorney licensed to practice law in the State of California, with a principal place of business within Clark County in the State of Nevada.

5. Plaintiff is informed and believe and thereon allege Defendant ALBRIGHT STODDARD WARNICK ALBRIGHT (hereinafter ASWA) was, at all times mentioned herein, a business organization, form unknown, with a principal place of business within the Clark County in the State of Nevada.

6. Plaintiffs are informed and believe and thereon allege that Defendants STODDARD, JR. and ASWA were engaged in the practice of law under the name of ASWA and that all times STODDARD was the agent, employee or partner of ASWA and in doing the things alleged herein was acting within the scope of such agency.

7. Plaintiff is ignorant of the true names and capacities, whether individual, corporate, associate or otherwise of Defendants DOES 1 through 20, inclusive. Upon information and belief, each fictitious Defendant is in some way responsible for, participated in, or contributed to, the matters and things of which Plaintiff complain herein, and in some fashion, has legal responsibility therefore. When Plaintiff ascertain the exact identity of each such fictitious Defendant and the nature of such fictitious Defendant's responsibility for, participation in, and

Complaint for Damages

contribution to, the matters and things alleged herein, Plaintiff will seek to amend this Complaint to set forth the same.

### FACTS COMMON TO ALL CAUSES OF ACTION

8.  PCS was formed in 1992 and has become one of the largest and most capable reinforcing steel contractors in the United States. PCS fabricates and installs reinforcing steel.

9.  In 2007, PCS sought to expand its business by acquiring the assets of a group of companies, generally known as Century Steel companies that competed in the structural steel and reinforced steel business in the states of Nevada, Utah and New Mexico. The Century Steel companies were owned by three members (or their Trusts) of the Leany family, Lynn M. Leany, Todd Lee Leany and Tamra Mae L. Hunt. PCS also believed that Todd Lee Leany, due to his contacts and experience in the Las Vegas area market, could provide value to PCS.

10. In December of 2007, PCS and the owners of the acquired companies entered into a Letter of Intent and began negotiation of a series of agreements that would result in the purchase by PCS of the assets of the Century companies. The Letter of Intent included a term sheet that set forth the general terms of the agreement, including setting forth a working capital requirement that was designed to protect the net asset value being purchased by PCS. In brief, to the extent to which the working capital was below a given number, the purchase price would be reduced on a dollar for dollar basis.

11. A significant aspect of the purchase of assets by PCS was that PCS sought to obtain the loyal services of Todd Lee Leany. To that end, PCS proposed, and Todd Leany accepted, a proposal wherein Todd Leany would become an Executive Vice President of PCS. To accomplish this purpose, PCS and Leany negotiated an Employment Agreement and a non-compete agreement. Todd Lee Leany and the Century entities were represented in the asset purchase

<016>
</016>

contribution to, the matters and things alleged herein, Plaintiff will seek to amend this Complaint to set forth the same.

### FACTS COMMON TO ALL CAUSES OF ACTION

8. PCS was formed in 1992 and has become one of the largest and most capable reinforcing steel contractors in the United States. PCS fabricates and installs reinforcing steel.

9. In 2007, PCS sought to expand its business by acquiring the assets of a group of companies, generally known as Century Steel companies that competed in the structural steel and reinforced steel business in the states of Nevada, Utah and New Mexico. The Century Steel companies were owned by three members (or their Trusts) of the Leany family, Lynn M. Leany, Todd Lee Leany and Tamra Mae L. Hunt. PCS also believed that Todd Lee Leany, due to his contacts and experience in the Las Vegas area market, could provide value to PCS.

10. In December of 2007, PCS and the owners of the acquired companies entered into a Letter of Intent and began negotiation of a series of agreements that would result in the purchase by PCS of the assets of the Century companies. The Letter of Intent included a term sheet that set forth the general terms of the agreement, including setting forth a working capital requirement that was designed to protect the net asset value being purchased by PCS. In brief, to the extent to which the working capital was below a given number, the purchase price would be reduced on a dollar for dollar basis.

11. A significant aspect of the purchase of assets by PCS was that PCS sought to obtain the loyal services of Todd Lee Leany. To that end, PCS proposed, and Todd Leany accepted, a proposal wherein Todd Leany would become an Executive Vice President of PCS. To accomplish this purpose, PCS and Leany negotiated an Employment Agreement and a non-compete agreement. Todd Lee Leany and the Century entities were represented in the asset purchase

3

Complaint for Damages

A3

agreement and the Leany Employment Agreement and non-compete agreement by STODDARD and AWSA. STODDARD and AWSA, due to their involvement in the negotiation and documentation of the Employment Agreement and non-compete agreement were intimately aware of the terms of those agreements.

12. In February, 2008, STODDARD and AWSA agreed to represent PCS with regard to a collection matter against a third party. Around this time, STODDARD advised PCS that he was particularly well-suited to represent PCS as he was licensed to practice law in both California and Nevada. STODDARD and AWSA did not obtain the informed written consent of PCS to the concurrent representation of clients with adverse interests, in contravention of the Rules of Professional Conduct and their ethical duties to PCS. STODDARD and AWSA agreed to represent PCS on multiple matters commencing in February, 2008 and continuing throughout the majority of 2009.

13. In each of its representations of PCS, STODDARD and AWSA had extensive contact with the headquarters office of PCS, located within the County of San Diego, which included, but was not limited to, sending invoices to the San Diego office of PCS; recieving payment from the San Diego office of PCS; telephone and email contact with the San Diego office to discuss cases and strategies to utilize; and, received direction from the San Diego office.

14. The Asset Purchase Agreement, Employment Agreement and non-compete agreement were closed and executed on April 1, 2008.

15. At the time Todd Lee Leany executed the Employment Agreement, non-compete agreement and Asset Purchase Agreement, he failed to disclose his interest in a company that competed with PCS (and the Century entities), Uintah Investments LLC, doing business as Sierra Reinforcing (hereinafter "Sierra"). Leany held a fifty-one percent interest (51%) in Sierra as of April 1, 2008. Sierra was operated by Tom Prince (hereinafter "Prince"), a friend of Todd Lee Leany, who owned a forty-nine percent (49%) interest in Sierra. Leany's interest in Sierra

4

Complaint for Damages



violated the terms of the agreements Leany executed, including the terms of the Asset Purchase Agreement, Employment Agreement and non-compete agreement.

16. In December of 2008, Todd Lee Leany purportedly sold his interest in Sierra to Prince, with Leany being compensated by way of a promissary note. Plaintiff are informed and believe and thereon allege that the promissary note had a provision that greatly increased the amount owed if there was a change in control of Sierra.

17. Around that time frame of December, 2008, Todd Lee Leany recommended to the President of PCS that PCS purchase Sierra and that PCS employ Prince. PCS ultimately agreed to employ Prince and to purchase certain assets of Sierra, but PCS never bought the entirety of Sierra.

18. In January, 2009, PCS retained STODDARD and ASWA to represent PCS's interests with regard to the employment of Prince and the purchase of certain of Sierra's assets.

19. During the course of this representation, STODDARD and ASWA learned that Todd Lee Leany had an interest in Sierra. This was a material fact of significance to PCS, and it constituted a conflict of interest. Furthermore, Leany's interest in Sierra violated the terms of the Asset Purchase Agreement, Employment Agreement and non-compete agreement. STODDARD and ASWA knew, or should have known, that Leany's interest in Sierra constituted a violation of the Asset Purchase Agreement, Employment Agreement, non-compete agreement as well as the various warranties and representations made by Leany at the time the Asset Purchase Agreement closed.

20. STODDARD and ASWA did not inform PCS of these material facts, of the existence of a conflict of interest, or withdraw from the representation of PCS in this matter. Rather than disclose the material facts or withdraw from the representation, STODDARD and ASWA kept secret the material facts.

Complaint for Damages

21. Plaintiff have discovered the existence of these facts within one year of the filing of this complaint.

### FIRST CAUSE OF ACTION
### PROFESSIONAL NEGLIGENCE
### (Against all Defendants)

22. Plaintiff incorporate paragraphs 1 through 21 as if fully alleged here.

23. At all relevant times, the Defendants, and each of them, owed Plaintiff the duty of care and skill in performing professional services on behalf of Plaintiff. The Defendants also had the obligation to comply with applicable professional standards, as promulgated from time to time.

24. At all relevant times, Defendants breached their duties to exercise reasonable care and skill in performing professional services as set forth above.

25. Defendants' malpractice includes, but is not limited to:

   a. Failed to preserve and protect the economic interests of Plaintiff;

   b. Failed to zealously and competently protect and advance Plaintiff's interests;

   c. Failed to advise Plaintiff of material facts discovered by Defendants;

   d. Failed to obtain an informed written waiver of the conflict of interest that existed during Defendants' representation of Plaintiff.

26. As a proximate and legal result of Defendants' negligence, the Plaintiff have been damaged in an amount presently unknown, the extent of which will be proven at trial.

### SECOND CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTIES
### (Against all Defendants)

27. Plaintiff incorporate by reference the allegations of paragraphs 1 through 26, inclusive, of this Complaint as though set forth here in full.

Complaint for Damages

28. Attorneys, like Defendants here, owe their clients fiduciary duties of uncompromised loyalty.

29. As Plaintiff's fiduciary, Defendants were required to disclose all information material to the Plaintiff's interest; were required to place Plaintiff's interests above their own; and were required to exercise the greatest diligence in protecting Plaintiff.

30. The fiduciary duty of loyalty required Defendants to place the interests of the Plaintiff, their beneficiaries, over any personal interest of Defendants.

31. As set forth herein, Defendants breached their fiduciary duty to the Plaintiff by failing to protect the Plaintiff's interests by, among other things:

   a. Failed to preserve and protect the economic interests of Plaintiff's;
   b. Failed to zealously and competently protect Plaintiff's interests;
   c. Failed to advise Plaintiff of the extent and nature of Todd Lee Leany's interest in Sierra, thereby delaying the discovery by Plaintiff of Leany's fraud, self-dealing and dishonesty.

32. In doing the acts herein alleged, and others presently unknown to Plaintiff, Defendants did not exercise the care and corresponding degree of fairness and good faith and fair dealing towards the Plaintiff's interests as were required by virtue of their fiduciary relationship.

33. Defendants' material breaches directly and proximately caused damage and injury to Plaintiff in an amount presently unknown the extent of which will be proven at trial.

34. Defendants' misconduct in causing the injuries and damages to the Plaintiff was intentional, willful, malicious and oppressive. Plaintiff are entitled to an award of punitive and exemplary damages against Defendants in an amount to be established according to proof at the time of trial.

Complaint for Damages

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

1. For general damages according to proof;
2. For punitive damages on the second cause of action, and
3. For costs of suit incurred herein, and for such other and further relief as the Court deems just and proper.

Date JUNE 24, 2011

STANFORD AND ASSOCIATES

By _____
Dan L. Stanford
David R. Hendricks
Attorneys for Plaintiff